# Exhibit 5

# News: Ohio Regulator Warns Sportsbooks About Offering Prediction Markets

A letter from the Ohio Casino Control Commission says that launching sports event contracts or working with prediction markets like Kalshi could put a sportsbook's license in jeopardy

DUSTIN GOUKER
AUG 25, 2025

♡ 2    💬    ↻                                                                Share

**Editor's note:** *The Early Line with a roundup of gambling news will still publish later today.*



A letter from the Ohio Casino Control Commission warned sportsbooks about trying to offer prediction markets based on sporting events.



Ohio is one of seven states that have sent cease-and-desist letters to prediction markets like Kalshi for allegedly offering illegal sports betting.

The letter, dated Monday and obtained by *The Closing Line,* makes it clear the OCCC would not tolerate offering sports betting via a prediction market without a proper license and vetting. From the letter:

> "If an Ohio sports gaming licensee chooses to offer sporting event contracts in Ohio through their own DCM or FCM (or those under common ownership or operated by a related entity) … the Commission will consider these choices as it evaluates the continued suitability of a sports gaming licensee, including key employee licensees, to maintain a license."

The letter goes on to say that geofencing such an offering and/or restricting its use by Ohio residents while offering it in the rest of the country "may not alleviate the suitability concern" for an operator depending on the logistics. And further:

> Any business relationship between an Ohio sports gaming licensee (including its related entities or those under common ownership) with any entit(ies) offering or facilitating the offering of unlicensed sports gaming in Ohio calls into question the reputation of the licensee and the integrity of sports gaming in Ohio.

The letter was signed by Matthew Schuler, the OCCC's executive director.

[FanDuel signaled its intention to get into prediction markets](#) with a partnership last week, albeit without sports at the start. DraftKings has been reported to be kicking tires on how to best enter the prediction markets space.

The letter from Ohio — one of the biggest states with regulated sports betting — complicates the path forward for the sports betting industry as it considers the prediction markets opportunity. The letter, in theory, could allow sportsbooks a way to thread the needle, either by getting another sports betting license covering prediction markets, or by trying to vet a prediction markets offering through an existing license. But it's not clear from the letter if either of those scenarios would be suitable solutions.

It also makes it far more difficult for Kalshi or others to work with existing sports betting operators. No sportsbook operator is likely to be willing to put its Ohio license on the line to work with Kalshi or another prediction market.

Here's the letter:

> The Ohio Casino Control Commission ("Commission") has jurisdiction over all persons conducting or participating in the conduct of sports gaming in Ohio. R.C. 3775.02(A). The Commission has a continuing statutory responsibility to determine

the suitability of its sports gaming licensees. The Commission writes to make you aware of potential actions that could impact your continued suitability to maintain a sports gaming license in Ohio.

The Commission understands that sports gaming licensees may be considering entering the prediction market landscape. Well-known sports books have apparently explored making sporting event contracts available outside of the ambit of their licensure with the Commission. Reports range from sportsbooks planning to enter the prediction marketplace by acquiring an existing Designated Contract Market ("DCM"), becoming a DCM or a Futures Commission Merchant ("FCM"), or associating or partnering with a DCM or FCM directly or indirectly to offer sporting event contracts outside of the regulatory framework of state gaming regulators.

Offering "event contracts" on sporting events ("sporting event contracts") to citizens located within the State of Ohio without a sports gaming license violates Ohio law. *See* R.C. Chapter 3775. "Event contracts" generally provide consumers the ability to purchase a contract corresponding to one of two outcomes for an event. In the sporting event context, a consumer may purchase a contract that reflects which team the consumer believes will win or lose a matchup, or whether a team or player will achieve a certain statistical outcome in a game. Either way, the ultimate result of these contracts is money being won or lost based on the outcome of the matchup or statistical achievement in the game. Plainly stated, companies that are offering sporting event contracts are operating online sports gaming. Sports gaming cannot be offered in Ohio without a license issued by the Commission. R.C. 3775.03(A). Sports gaming in Ohio must comply with all requirements in R.C. Chapter 3775 and the rules adopted thereunder.

If an Ohio sports gaming licensee chooses to offer sporting event contracts in Ohio through their own DCM or FCM (or those under common ownership or operated by a related entity), or decides to associate, coordinate, or otherwise partner directly or indirectly with entities offering or facilitating the offering of sporting event contracts in Ohio, the Commission will consider these choices as it evaluates the continued suitability of a sports gaming licensee, including key employee licensees, to maintain a license.

Furthermore, even if a sports-gaming licensee in Ohio geofences or takes other actions to restrict Ohioans from accessing sporting event contracts in the prediction markets, that are otherwise offered to their patrons outside Ohio, this may not alleviate the suitability concern if the licensee associates, coordinates, or partners

> with a company offering or facilitating the offering of these sporting event contracts in Ohio. Any business relationship between an Ohio sports gaming licensee (including its related entities or those under common ownership) with any entit(ies) offering or facilitating the offering of unlicensed sports gaming in Ohio calls into question the reputation of the licensee and the integrity of sports gaming in Ohio. The Commission will consider a licensee's choices to associate with a company operating illegally in this State and may take administrative action against any licensee that does.

The Closing Line is a reader-supported publication. To receive new posts and support my work, consider becoming a free or paid subscriber.

Type your email... Subscribe

2 Likes

## Discussion about this post

Comments   Restacks



Write a comment...

© 2025 Dustin Gouker · Privacy · Terms · Collection notice
Substack is the home for great culture