# Exhibit 8

**Ohio Casino Control Commission**

CasinoControl.Ohio.gov

Mike DeWine, *Governor*   Jim Tressel, *Lt. Governor*   Thomas J. Stickrath, *Chair*

October 6, 2025

Mr. Joshua B. Sterling
Milbank
1850 K Street, NW, Suite 1100
Washington, DC 20006
**Sent via Email to:** jsterling@milbank.com

Re: Response to Kalshi Letter dated September 18, 2025

Dear Mr. Sterling:

The Ohio Casino Control Commission ("Commission") has reviewed the response (the "Response") of Kalshi EX LLC ("Kalshi"), dated September 18, 2025, to the Commission's letter of August, 19, 2025, concerning the Commission's cease-and-desist letter directed to Kalshi dated March 31, 2025 (the "Cease-and-Desist Letter").

We have appreciated the dialogue with Kalshi and the information that Kalshi has provided in response to the Cease-and-Desist Letter. The Commission has considered the points and information presented by Kalshi in support of its contention that the Commodity Exchange Act and its implementing regulations preempt Ohio's sports gaming and gambling laws. After analyzing Kalshi's arguments and the relevant legal authorities (including those identified by Kalshi), the Commission is unpersuaded that Ohio law is preempted by federal law as Kalshi contends. Consequently, to the extent Kalshi chooses to continue to offer unlicensed and unregulated sports gaming in the form of sporting event contracts within Ohio, Kalshi will be violating Ohio law.

**The Commission therefore expects Kalshi to comply with the Cease-and-Desist Letter and to notify the Commission in writing of such compliance by no later than October 20, 2025.**

The Sports Gaming Licensee Advisement (the "Advisement") issued by the Commission on August 25, 2025 reflects an objective view of existing law and the nature of gaming regulation in Ohio (and elsewhere). The Commission is charged with ensuring the integrity of sports gaming in Ohio by enforcing its sports gaming laws, which includes a continuous assessment of the suitability of its licensees. Thus, when the Commission became aware of media reports that sports gaming licensees either contemplated a business relationship with a Designated Contract Market ("DCM") offering sporting event contracts in Ohio, or becoming a DCM themselves, the Commission issued the Advisement in good faith to provide proactive guidance to its licensees in the context of the ever-evolving landscape of prediction markets.

The Advisement reminded sports gaming licensees of their obligations, which they voluntarily undertook, to maintain their suitability, *see e.g.,* R.C. 3775.09 and Ohio Adm.Code 3775-4-02 and 05, and rightfully cautioned licensees that having a business relationship with an entity offering unlicensed and unregulated sports wagers in Ohio could impact licensees'

continuing suitability. The Advisement, like others the Commission has sent to its regulated community, invited sports gaming licensees to discuss these matters with the Commission, which they have begun to do. There is nothing unusual about this practice: state gaming regulators continually evaluate a gaming licensee's suitability to maintain its licensure, which includes ascertaining whether a licensee forges a business relationship with an illegal operator in that state. This occurs in all phases of legalized gaming, including casino gaming, sports gaming, fantasy contests, and skill-based amusement gaming in Ohio, and across all licensure types, from operators to providers to suppliers and to employees. The Commission therefore does not presently intend to alter the Advisement.

Finally, the Advisement certainly does not represent an effort to "do indirectly what [the Commission] is barred from doing directly," as Kalshi suggests. Rather, despite being afforded the opportunity over several months to provide the Commission with compelling facts and information to prove its legal contentions, Kalshi failed to do so. Should Kalshi decline the opportunity to cease its unlicensed and unregulated sports gaming activities in Ohio, the Commission will be forced to address such violation of law directly.

Sincerely,

Matthew T. Schuler
Executive Director